UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Ryan Birmingham, Roman Leonov, Steven Hansen,
Mitchell Parent, and Jonathan Zarley, individually and
on behalf of all others similarly situated,

Case No. 21-CV-23472

Plaintiffs,

v.

Alex Doe; John Does 1–3; Olga Abrykosova; Peter
Mohylny; Ester Holdings Inc.; The Investing Online;
Vsevolod Tovstun; Borys Konovalenko; Mayon
Holdings Ltd; Mayon Solutions, LLC; Mayon Solutions
Ltd; Olga Tielly; Marina Garda; Daria Eckert;
Anna Shymko; Wealthy Developments LP; Anton
Bilous; Aware Choice Ltd.; Ivan Hrechaniuk; Profit
Media Group LP; VDD-Trading, Ltd.; Dmytro Fokin;
Manuchar Daraselia; Auro Advantages, LLC; Notus,
LLC; Alla Skala; Shopostar, LLC; Nataliya Los; Global
E-Advantages; Easy Com, LLC; Jase Victor Davis;
Grovee, LLC; Jared Goodyear; Brass Marker s.r.o.;
Sergiy Prokopenko; Trans-Konsalt MR Ltd.;
IT Outsourcing Co., Ltd.; Art Sea Group Ltd.;
ePayments Systems Ltd.; Boonruk Ruamkit Co., Ltd.;
Nattpemol Krinara; Papahratsorn Raviratporn; and
Timothy Stubbs,

Defendants.
_____/

**PLAINTIFFS' SECOND MOTION FOR ALTERNATIVE SERVICE BY EMAIL,
INTERNET, SOCIAL MEDIA AND PUBLICATION ON DEFENDANTS AND
INCORPORATED MEMORANDUM OF LAW**

Plaintiffs Ryan Birmingham, Roman Leonov, Mitchell Parent, Jonathan Zarley, Steven

Hansen ("Plaintiffs"), individually, and on behalf of all others similarly situated, respectfully move

this Court for an order, pursuant to Federal Rules of Civil Procedure 4(f)(3) and 4(h)(2), authorizing

alternative service of process of the summon and complaint on select Defendants in this action by:

(i) email; (ii) social media direct messaging (i.e., Facebook or LinkedIn); (iii) FedEx International

Mail, return receipt requested; or (iv) publication; and service be deemed complete upon delivery

of summons and complaint by any of the foregoing methods (the "Motion"). Plaintiffs' Motion is supported by the previously filed Declaration of Warren E. Gluck, and the exhibits thereto (the "Gluck Decl.") [ECF No. 24]. In further support of their Motion, Plaintiffs respectfully state:

## I.   <u>INTRODUCTION</u>

Plaintiffs originally filed this action against sixteen entities and their respective owners/officers/directors (the extent of which Plaintiffs are presently aware), alleging that each conspired to orchestrate and perpetrate a massive, far-reaching scheme to defraud Plaintiffs and similarly situated investors. *See* Verified Class Action Complaint, ECF No. 1. Through preliminary discovery, Plaintiffs have developed a greater understanding of the scheme and its notable players. Consequently, Plaintiffs filed an Amended Complaint, which included newly discovered facts and Defendants. *See* ECF No. [64] Amended Complaint.

Between 2018 and 2021, Plaintiffs and similarly situated customers were victims of a nearly $75 million international scheme that defrauded them of money or cash equivalents. The scheme—hosted entirely on RoFx.net—lured victims with a purported "robotically operated foreign exchange trading" platform, which promised safe, easy, and highly lucrative profits (hereinafter "RoFx" or the "RoFx Scheme").

The RoFx Scheme revolved around a supposed artificially intelligent algorithm which could identify profitable foreign exchange trades to be executed by third-party brokers. Customers were enticed to contribute their funds to the Scheme—and, in return for a service fee, customers would earn passive income, courtesy of the RoFx software and its network of brokers. The RoFx Scheme was promoted online via, inter alia, elaborately-crafted sponsored content disguised as legitimate financial reporting—which was cited or re-published by major news outlets.

The entire RoFx Scheme was an online fiction. There is no RoFx entity running any smart trading software. No foreign exchange trading was done using RoFx customer funds.

The RoFx Scheme had only one purpose: steal as much money as possible from their "customers" and keep them from realizing what was actually happening until it was too late. And for nearly four years the RoFx Scheme was wildly successful, bilking unsuspecting victims for $75 million or more. The RoFx Scheme was fictitious but the harm very real.

After obtaining monies from their victims, the persons operating the RoFx Scheme (the "RoFx Operators") laundered the funds through a complicated, globe-sprawling web of ever-shifting shell companies and financial institutions. This second part of the scheme—the "Money Laundering Enterprise"—includes dozens of persons and entities spanning at least three continents. Defendants went to extraordinary lengths to steal *and* conceal customer funds.

Before filing the Amended Complaint, Plaintiffs moved this Court to serve unreachable Defendants via electronic mail, internet direct messaging, web posting, and publication. *See* Nov. 5, 2021 Mot. for Alt. Service ("1st Mot. for Alt. Service") [ECF No. 36]. This Court granted the 1st Mot. for Alt. Service, "allowing service of the summons, complaint, temporary restraining order, and all other filings in this matter upon the Defendants identified in [that] Order via electronic mail ('e-mail'), website and social media postings." Nov. 16, 2021 Order [ECF No. 38].

In this Motion, Plaintiffs request an order, pursuant to Federal Rule of Civil Procedure 4(f)(3) and h(2), authorizing service of process on the "New Defendants," [1] and previously named defendants Nataliya Los, Borys Konovalenko, and Aware Choice Ltd via (i) email; (ii) social media direct messaging; (iii) FedEx International Mail, return receipt requested; or (iv) publication

---

[1] The New Defendants are those included in the Amended Complaint but not identified by the Court's Order granting alternate service. *Compare* 1st Mot. for Alt. Service, *with* Am. Compl. The New Defendants include (1) Olga Abrykosova; (2) The Investing Online; (3) Mayon Holding Ltd.; (4) Mayon Solutions, LLC; (5) Ivan Hrechaniuk; (6) Profit Media Group LP; (7) Alla Skala; (8) Jase Victor Davis; (9) Jared Goodyear; (10) Sergiy Prokopenko; (11) Trans-Konsalt MR Ltd.; (12) Art Sea Group Ltd.; (13) Alex Doe; (14) Vsevolod Tovstun; (15) Mayon Solutions Ltd; (16) Olga Tielly; (17) Marina Garda; and (18) Daria Eckert.

(collectively "Motion Defendants"). Service via the aforementioned means are appropriate and necessary in this case because the Motion Defendants took calculated steps to evade traditional service and rely on electronic communications to operate and market their businesses via the internet. Plaintiffs have reason to believe they have the ability to contact the Motion Defendants electronically, or through publication in order to provide notice of Plaintiffs' claims. Plaintiffs have also identified social media accounts and company websites apparently associated with these Motion Defendants. Plaintiffs respectfully submit that an order allowing service of process and service of all filings via e-mail, social media, mail, or publication will benefit all parties and the Court by ensuring that Motion Defendants receive immediate notice of the pendency of this action and allowing this action to move forward expeditiously. Absent the ability to serve the Motion Defendants by these means, Plaintiffs will almost certainly be left without the means to pursue a remedy.

II.    **BACKGROUND**

1.      On September 29, 2021, Plaintiffs filed this action in the Southern District of Florida.

2.      Shortly thereafter, Plaintiffs began to serve the named Defendants involved in the fraudulent scheme with a copy of the summons and Verified Class Action Complaint. Plaintiffs sent via FedEx International Mail, return receipt requested, copies of the summons and complaint to each Defendant listed in the Verified Class Action Complaint. *See* 1st Mot. for Alt. Service, Ex. A. [ECF No. 36-1].

3.      Plaintiffs successfully executed service of the Verified Class Action Complaint on seven (7) Defendants via traditional service, including Auro Advantages LLC, Global E-Advantages LLC, Grovee LLC, EasyCom LC, Notus LLC, Shopostar LLC, and Anna Shymko. *See* Gluck Decl. ¶ 4 (a)–(h).

4.      Plaintiffs further successfully executed service of the Verified Class Action Complaint on eight (8) Defendants via alternate service, including Brass Marker s.r.o., Ester Holdings Inc., ePayments Systems Ltd., Peter Mohylnyi, Boonruk Ruamkit Co., Ltd., IT Outsourcing Co., Ltd., Nattpemol Krinara; and Papahratsorn Raviratporn. *See* Decl. of Ruarri M. Rogan [ECF No. 43] 2–4.

5.      Plaintiffs' attempts to serve Defendants Nataliya Los, Borys Konovalenko, and Aware Choice Ltd., within the United States at their last known addresses were unsuccessful; the addresses for these individuals and entities are fake. Defendant Konovalenko has since filed a corrected mailing address and his preferred method of correspondence via email at borys.konovalenko@gmail.com. *See* Answer of Borys Konovalenko [ECF No. 57].

6.      Defendants used fake addresses on company records and reside across more than thirteen different countries. As a result, tracking them down and attempting to serve has been costly and difficult. Consequently, Plaintiffs seek authorization for alternative service on the Motion Defendants who were not previously included in the Court's Order Granting Motion for Alternate Service. Table 1 below provides a summary of the methods of service currently applicable to each Defendant and their corresponding country of residence:

| Defendant Number | Defendant Name | Country of Residence |
|---|---|---|
| Original Defendants who accepted formal service: | | |
| 1 | Auro Advantages | United States |
| 2 | Global E-Advantages | United States |
| 3 | Grovee | United States |
| 4 | EasyCom | United States |
| 5 | Notus | United States |
| 6 | Shopostar | Ukraine |
| 7 | Anna Shymko | Ukraine |
| Original Defendants included in the Court's Order Granting Alternative Service: | | |
| 8 | Brass Marker s.r.o. | Czech Republic |
| 9 | Ester Holdings Inc. | Cyprus |
| 10 | ePayments Systems Ltd. | United Kingdom |
| 11 | Boonruk | Thailand |

| Defendant Number | Defendant Name | Country of Residence |
|---|---|---|
| 12 | IT Outsourcing | Thailand |
| 13 | Nattpemol Krinara | Thailand |
| 14 | Paphratsor Nrviratporn | Thailand |
| 15 | Wealthy Developments LP | United Kingdom |
| 16 | Anton Bilous | United Kingdom |
| 17 | Dmytro Fokin | United Kingdom |
| 18 | VDD-Trading, Ltd. | United Kingdom |
| 19 | Manuchar Daraselia | United Kingdom |
| 20 | Peter Mohylny | United Kingdom or Hong Kong |
| Defendants for which this Motion seeks alternate service ("**Motion Defendants**"): | | |
| 21 | The Investing Online | Unknown |
| 22 | Borys Konovalenko | Ukraine |
| 23 | Mayon Holdings Ltd | Hong Kong/China |
| 24 | Mayon Solutions, LLC | United States |
| 25 | Mayon Solutions Ltd | United Kingdom |
| 26 | Alex Doe | Ukraine |
| 27 | Vsevolod Tovstun | Ukraine |
| 28 | Olga Tielly | United Kingdom |
| 29 | Marina Garda | Hungary |
| 30 | Daria Eckert | Ukraine |
| 31 | Nataliya Los | Ukraine |
| 32 | Olga Abrykosova | United Kingdom |
| 33 | Alla Skala | Canada |
| 34 | Jase Victor Davis | United States |
| 35 | Ivan Hrechaniuk | United Kingdom |
| 36 | Sergiy Prokopenko | Czech Republic |
| 37 | Jared Goodyear | United States |
| 38 | Aware Choice Ltd | United Kingdom |
| 39 | Profit Media Group LP | United Kingdom |
| 40 | Trans-Konsalt MR Ltd | Bulgaria |
| 41 | Art Sea Group Ltd | South Korea/Republic of Korea |

*Table 1: Defendants*

7.      As discussed below, Plaintiffs have sufficiently demonstrated alternative means of service are reasonably calculated to inform the Motion Defendants of the pendency of this action and afford them an opportunity to respond or object. Such efforts have already proven successful for eight Defendants pursuant to the Court's prior Order granting alternate service on select Defendants. *See* Decl. of Ruarri M. Rogan at 2–4.

**III.      STATEMENT OF FACTS**

### A.    Motion Defendants Took Steps to Evade Traditional Service.

The Motion Defendants went to great lengths to avoid identification in the event that the RoFx Scheme or Money Laundering Enterprise was exposed. They orchestrated this effort through a complex, global web of Company Organizers, Front Companies, Layering Companies, and Cash-Out Companies. *See generally* Am. Compl. Some of the Motion Defendants, and their respective roles, are illustrated in Figure 1 below.



*Figure 1: The Money Laundering Enterprise*

Company Organizers played a critical role in concealing the true identity of the RoFx Operators, and Defendant Konovalenko was the conductor of the symphony. Defendant Konovalenko and his group of companies Mayon Solutions Ltd. ("Mayon UK"), Mayon Solutions LLC ("Mayon USA"), and Mayon Holding Ltd. ("Mayon HK") are in the business of forming companies and providing "post-incorporation" "resident director services," among other services. *See generally* Am. Compl.

On August 19, 2019, Defendant Konovalenko, representing Mayon UK, entered into a service agreement with Alex Doe ("RoFx Service Agreement"), one of the RoFx Operators, to

form or acquire Front Companies in the United States. *See id.* The main purpose of these Front Companies was to distance the RoFx Operators from the source of RoFx investments—thereby concealing their identity. *See id.* Alex Doe went two steps further to preserve his anonymity. First, he had Defendant Vsevolod Tovstun act as his representative in signing the service agreement. *See id.* Second, he communicated with Defendant Konovalenko exclusively through Telegram and email. *See id.*

Because they too needed to conceal their own identities, the RoFx Operators and/or Defendant Konovalenko and his Mayon Companies commissioned Defendants Alla Skala, Nataliya Los, Jase Victor Davis, and Olga Abrykosova to serve as the face of the Front Companies. *See id.* At some point, they too realized they needed to protect their own identities in case one day, the music stopped. For example, Defendant Nataliya Los used two different fake addresses in filling the annual reports for Defendant ShopoStar LLC. The first address was in Columbia, South Carolina. Plaintiffs attempted service on this address; however, it was unsuccessful because the woman who answered the door claimed Defendant Los did not live there nor had she ever met her. *See* Gluck Decl., Ex. 11 at 32. In Shopostar's 2020 annual report, Defendant Los changed her address to a different location in Brandon, Mississippi. Again, she used an incorrect address—one that belonged to Defendant Timothy Stubbs. Defendant Konovalenko used the same incorrect mailing address in the Shopostar's annual report that he filed on March 3, 2016.

Despite such hurdles in physically locating the Defendants, the Plaintiffs have had some success reaching Defendants via the methods authorized by the Court. Specifically, Plaintiffs successfully provided notice of the Verified Class Action Complaint to eight Defendants via electronic means pursuant to the Court's prior Order granting alternate service on select Defendants. *See* Decl. of Ruarri M. Rogan at 2–4. Given the Defendants' calculated steps to evade service and the past success in electronic service, Plaintiffs urge this Court to grant the same relief

for the Motion Defendants. *See supra* tbl.1 (listing the Motion Defendants).

### B.   Motion Defendants rely on electronic communications to operate and market their business via the internet.

The RoFx Operators used email to communicate with its customers. *See* Am. Compl. ¶¶ 77–78. They used investor emails to advertise its new trading algorithm and keep investors up to date on the platform's regulatory issues. *Id.* The trading platform had a live chat function on the site used to field questions and a Facebook page to solicit investment. *See id.* ¶ 66, 83, 90. The RoFx Operators used these channels to promote its products, push updates, and advertise its initial coin offering. *See id.* They also had multiple phone numbers in the United States, Hong Kong, and the United Kingdom. *Id.* ¶ 66. They advertised with online media outlets such as Facebook, Google, and Yahoo Finance, and consumer review websites such as Trustpilot—often flooding these sites with positive reviews. *Id.* ¶¶ 82–84. The RoFx Operators also accepted investor deposits in the cryptocurrency Bitcoin, which is an internet-based currency. *See id.* ¶ 230.

In sum, given the Motion Defendants operated an Internet-based trading platform, are savvy enough to transact in digital-internet based cryptocurrencies, and communicated with their investors exclusively through electronic and telephonic communications—alternate service in the form of e-mail, social media, mail, and publication will adequately provide the Motion Defendants with reasonable notice of this action. In fact, this is the most effective and expeditious method of service to notify the Motion Defendants of the pending action given their concealed identities and residences all over the world.

### C.   Motion Defendants have valid means of electronic contact.

Motion Defendants operate Internet-based businesses and identify e-mail, including onsite contact forms, as a means of communication such that Plaintiffs will be able to provide the Motion

Defendants with notice of this action via e-mail, social media messaging, and website posting. As a practical matter, it is necessary for the Motion Defendants, who operated an entirely online business, to provide customers with a valid electronic means by which customers may contact them to ask questions. Moreover, when Motion Defendants have no physical office presence, they must have an online presence to comfort customers into believing their legitimacy. Consequently, many Motion Defendants either maintain a social media presence, email contact, or company contact form to communicate with Plaintiffs, and other similarly situated customers. Specifically, Motion Defendants have relied on the following electronic means of contact in connection with the RoFx Scheme or Money Laundering Enterprise:

| Defendant Name | Email | Social Media |
|---|---|---|
| Alternate Service by email and/or social media: | | |
| The Investing Online | john@theinvesting.online | |
| Borys Konovalenko | borys.konovalenko@gmail.com | |
| Mayon Holdings Ltd | mayonsolutionshkltd@@@gmail.com | |
| Mayon Solutions, LLC | mayon.llc@gmail.com | |
| Mayon Solutions Ltd | (1) Info@mayon.solutions; (2) Sales@mayon.solutions | |
| Alex Doe | angamg80@gmail.com | |
| Vsevolod Tovstun | companyretail777@gmail.com | |
| Olga Tielly | | (1) Facebook: https://m.facebook.com/olga.tielly; (2) Instagram: https://www.instagram.com/olga_tielly/ |
| Daria Eckert | daria.kosareva86@gmail.com | (1) Facebook: https://www.facebook.com/daria.eckert.33; (2) Instagram: https://www.instagram.com/daria.kosareva86/ |
| Olga Abrykosova | olga.abrikosova@gmail.com | |
| Alla Skala | supernotususa@gmail.com | |
| Sergiy Prokopenko | mazzone@bk.ru | |
| Jase Victor Davis | (1) st.khomenko@gmail.com; (2) support@dbiglobal.com | |

| Defendant Name | Email | Social Media |
|---|---|---|
| Ivan Hrechaniuk | | (1) Facebook: https://www.facebook.com/ivan.hrechaniuk.3; <u>OR</u> https://www.facebook.com/profile.php?id=100011458396578 <br> (2) LinkedIn: https://www.linkedin.com/in/ivan-hrechaniuk-0b419018b/?originalSubdomain=ua |

*Table 2: Motion Defendant Alternate Contact Information*

## IV.    <u>ARGUMENT</u>

Under Federal Rule of Civil Procedure 4(h)(2), a foreign partnership or other unincorporated association may be served with process in any matter prescribed by Rule 4(f) for serving foreign individuals. Federal Rule of Civil Procedure (4)(f)(3) allows a district court to authorize an alternate method for service to be effected upon a foreign defendant, provided that it is (i) reasonably calculated to give notice to the defendant and (ii) not prohibited by international agreement.

Here, Plaintiffs have made every reasonable effort to identify the physical addresses by which service could be effectuated upon the Motion Defendants and thereafter attempted to have such accomplished. Unfortunately, such efforts have proven unsuccessful because Motion Defendants used sham addresses and shell companies to hide their true identities and locations in an effort to perpetuate and conceal the RoFx Scheme or Money Laundering Enterprise. As discussed above, Motion Defendants operated and marketed ROFX completely online without any face-to-face interaction with their customers. ROFX advertised with mainstream online media outlets such as Facebook and Google. *See* Am. Compl. ¶¶ 81–82. Motion Defendants were able to maintain their anonymity behind the guise of the Internet by relying on email and online communications with their clients and exchanged digital currencies, which rely exclusively on

11

electronic communication for their operation. Given the Motion Defendants' online savviness and preferred methods of communicating with their own customers, service by e-mail, social media, or web posting is therefore reasonably calculated to reach the Motion Defendants and comports with due process. *F.T.C. v. PCCare247, Inc.*, No. 12 CIV 7189, 2013 WL 841037, at *6 (S.D.N.Y. Mar. 7, 2013) ("Where defendants run an online business, communicate with customers via email, and advertise their business on their Facebook pages, service by email and Facebook together presents a means highly likely to reach defendants."); *Microsoft Corp. v. Does*, No. 12-CV-1335 (SJ) (RLM), 2012 WL 5497946, at *2 (E.D.N.Y. Nov. 13, 2012) (approving alternative service where defendants were "alleged cybercriminals" whose "physical locations [we]re unknown").

Accordingly, Plaintiffs respectfully submit this Court should permit service on the Motion Defendants via e-mail, internet, social media or publication.

A.   **The Court May Authorize Alternative Service via Electronic Mail, Social Media, FedEx Return Receipt Mail, and Publication Under Federal Rule of Civil Procedure 4(f)(3).**

Federal Rule of Civil Procedure 4(h)(2) allows a foreign business entity to be served with process "in any matter prescribed by Rule 4(f), " including any manner ordered under Rule 4(f)(3). *CFTC v. Aliaga*, 272 F.R.D. 617, 619 (S.D. Fla. 2011). A foreign partnership or other unincorporated association can therefore be served in the same manner as serving a foreign individual pursuant to Rule 4(f)(3). *Id.* Federal Rule of Civil Procedure 4(f)(3) allows alternative methods for service of process, so long as those methods are not prohibited by international agreement and are directed by the Court. *See Prewitt Enters., Inc. v. The Org. of Petrol. Exporting Countries*, 353 F.3d 916, 923 (11th Cir. 2003); *see also Brookshire Bros., Ltd. v. Chiquita Brands Int'l*, No. 05-CIV-21962, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007); *Rio Props. Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). In fact, "as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be

accomplished in contravention of the laws of the foreign country." *Chanel, Inc. v. Zhixian*, 2010 WL 1740695, at *2 (*quoting Rio Props., Inc.*, 284 F.3d at 1014 and *citing Mayoral–Amy v. BHI Corp.*, 180 F.R.D. 456, 459 n.4 (S.D. Fla. 1998)).

The plain language of Rule 4(f)(3) reflects that the decision to issue an order allowing an alternate means of service lies within the sole discretion of the District Court. *Prewitt Enters., Inc.*, 353 F.3d at 921; *Rio Props., Inc.*, 284 F.3d at 1116. *See, e.g., Brookshire Bros., Ltd.*, 2007 WL 1577771, at *2 (noting that "district courts have broad discretion under Rule 4(f)(3) to authorize other methods of service"); *In re Int'l Telemedia Assocs.*, 245 B.R. 713, 720 (N.D. Ga. 2000) (noting that Rule 4(f)(3) is designed to allow courts discretion and broad flexibility to tailor the methods of service for a particular case). Rule 4 does not require a party attempt service of process by those methods enumerated under subsections (f)(1) and (f)(2), including by diplomatic channels and letters rogatory, before petitioning the court for alternative relief under subsection 4(f)(3). *Rio Props., Inc.*, 284 F.3d at 1114-15; *see also Brookshire Bros., Ltd.*, 2007 WL 1577771, at *1.

In *Brookshire*, the Honorable Judge Marcia G. Cooke allowed substitute service on a party's attorney pursuant to Rule 4(f)(3) holding as follows:

> Rule 4(f)(3) is one of three separately numbered subsections in Rule 4(f) and each subsection is separated from the one previous merely by the simple conjunction 'or.' Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates the primacy, and certainly Rule 4(f)(3) indicates no qualifiers or limitations which indicate its availability only after attempting service of process by other means.

*Brookshire Bros., Ltd.*, 2007 WL 1577771, at *1 (*quoting Rio Props., Inc.*, 284 F.3d at 1015); *accord TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. 687, 692 (S.D. Fla. Jan. 11, 2012) (noting that, in regards to Rule 4(f)(3), "there is no indication from the plain language of the Rule that the three subsections, separated by the disjunctive "or," are meant to be read as a hierarchy."). Judge Cooke further held, "[t]he invocation of Rule 4(f)(3), therefore, is neither a last resort nor

extraordinary relief." *Brookshire Bros., Ltd.*, 2007 WL 1577771, at *2.

      Additionally, the Constitution does not mandate that service be effectuated in any particular way. Rather, Constitutional due process considerations require only that the method of service selected be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Brookshire Bros., Ltd.*, 2007 WL 1577771, at *1 (*quoting Mullane v. Cent. Hanover Bank & Tr.*, 339 U.S. 306, 314 (1950)); *see also TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. at 692; *Rio Props., Inc.*, 284 F.3d at 1016.

      *1. Email*

      Under Fed. R. Civ. P. 4(f)(3), 'courts have authorized a wide variety of alternative methods of service including publication, mail to the defendant's last known address . . . [and] email.'" *TracFone Wireless, Inc. v. Hernandez*, 126 F. Supp. 3d 1357, 1364 (S.D. Fla. 2015) (quoting *Rio Props.*, 284 F.3d at 1018); *see, e.g., Rio Props.*, 284 F.3d at 1017 (holding, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable"); *In re Int'l Telemedia Assocs.*, 245 B.R. at 721 ("If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communicationchannels utilized and preferred by the defendant himself must be included among them."); *Williams-Sonoma Inc. v. Friendfinder, Inc.,* No. 06-cv-06572 (JSW), 2007 U.S. Dist. LEXIS 31299, at *3–8 (N.D. Cal. Apr. 17, 2007) (granting alternate service by email where defendants could not be located or refused service, and where email proved to be the most effective means for communication); *Hardin v. Tron Found.*, 20-CV-2804 (VSB), 2020 WL 5236941, at *1 (S.D.N.Y. Sept. 1, 2020) (granting alternative service by e-mail and social media messaging).

      Plaintiffs have identified the following email addresses associated with the Motion Defendants' companies or online profiles:

| Defendant Name | Email | Email Source |
|---|---|---|
| The Investing Online | john@theinvesting.online | John Purgos and this email address was listed as the media contact for The Investing Online's article promoting RoFx. *See* Am. Compl., Ex. 3. |
| Borys Konovalenko | borys.konovalenko@gmail.com | Borys Konovalenko identified this email address as his "preferable way" of correspondence. *See* ECF No. 57. |
| Mayon Holdings Ltd | mayonsolutionshkltd@gmail.com | Listed as the business email address in the company's annual report with the Companies Registry of Hong Kong. |
| Mayon Solutions, LLC | mayon.llc@gmail.com | Listed as the business email address in company documents filed with the state of New Hampshire. |
| Mayon Solutions Ltd | (1) Info@mayon.solutions; (2) Sales@mayon.solutions | Listed as the contact email addresses for the company in the RoFx Services Agreement entered into between Mayon Solutions Ltd, Alex Doe, and Vsevolod Tovstun. *See* Am. Compl. ¶¶ 162–66. |
| Alex Doe | angamg80@gmail.com | Alex Doe used this email address to communicate with Borys Konovalenko in regard to the RoFx Services Agreement. *See* Am. Compl. ¶¶ 162–66. |
| Vsevolod Tovstun | companyretail777@gmail.com | Listed as the contact email addresses for the company in the RoFx Services Agreement entered into between Mayon Solutions Ltd, Alex Doe, and Vsevolod Tovstun. *See* Am. Compl. ¶¶ 162–66. |
| Daria Eckert | daria.kosareva86@gmail.com | This email was discovered based on a comprehensive online search utilizing information about Daria Eckert relating to Mayon Solutions LLC. |
| Olga Abrykosova | olga.abrikosova@gmail.com | This email addresses was copied throughout communications regarding the RoFx Services Agreement. *See* Am. Compl. ¶¶ 162–66. |
| Alla Skala | supernotususa@gmail.com | This email was obtained from third party banking productions relating to RoFx customer transactions. |
| Sergiy Prokopenko | mazzone@bk.ru | Sergiy Prokopenko used this email to sign up for the cryptocurrency exchange Bitstamp. |

| Defendant Name | Email | Email Source |
|---|---|---|
| Jase Victor Davis | (1) st.khomenko@gmail.com;<br>(2) support@dbiglobal.com | (1) & (2) Jase Victor Davis listed both emails as his contact information in company documents filed with the state of New Hampshire on behalf of Easy Com LLC. |

*Table 3: Motion Defendant's Email Addresses*

2.  *Social Media and Internet*

Similarly, this Court and courts across the United States have authorized service of process by social media. *Rensel v. Centra Tech, Inc.*, No. 1:17-CV-24500-RNS/JB, 2019 WL 3429149, at *1 (S.D. Fla. Mar. 8, 2019) (granting plaintiffs motion for alternative service via e-mail, LinkedIn messenger, and the "contact us" form listed on the defendant's website through which he solicited investments for initial coin offerings); *see also St. Francis Assisi v. Kuwait Fin. House*, No. 3:16-cv-3240, 2016 U.S. Dist. LEXIS 136152, at *4 (N.D. Cal. Sep. 30, 2016) (discussing decision to grant "service by email, Facebook, and LinkedIn because notice through these accounts was reasonably calculated to notify the defendant of the pendency of the action and was not prohibited by international agreement"); *UBS Fin. Servs. v. Berger*, No. 13-cv-03770, 2014 U.S. Dist. LEXIS 193761, at *5 (N.D. Cal. Apr. 24, 2014) (recounting court's decision to authorize service via defendant's "gmail address and through LinkedIn's 'InMail' feature").

Plaintiffs have identified the following social media accounts associated with the Motion Defendants:

| Defendant | Facebook | Instagram | LinkedIn |
|---|---|---|---|
| Olga Tielly | https://m.facebook.com/olga.tielly | https://www.instagram.com/olga_tielly/ | |
| Daria Eckert | https://www.facebook.com/daria.eckert.33 | https://www.instagram.com/daria.kosareva86/ | |

| Defendant | Facebook | Instagram | LinkedIn |
|---|---|---|---|
| Ivan Hrechaniuk[2] | (1)https://www.facebook.com/ivan.hrechaniuk.3 (2)https://www.facebook.com/profile.php?id=100011458396578 | | https://www.linkedin.com/in/ivan-hrechaniuk-0b419018b/?originalSubdomain=ua |

*Table 4: Motion Defendants' Social Media*

### 3. FedEx Return Receipt, or in the alternative, Publication

Finally, of the twenty-one Motion Defendants for which this Motion seeks alternate means of service, seven[3] remain with no presently available alternate contact information. Given the unreachable nature of these remaining Motion Defendants, Plaintiffs respectfully request that the Court accept signed FedEx (or other commercial mail couriers) return receipts as alternative service and sufficient notice of the pending action. *See Strax Americas, Inc. v. Tech 21 Licensing Ltd.*, 16-25369-CIV, 2017 WL 5953117, at *2 (S.D. Fla. Mar. 23, 2017) (finding "that service via FedEx on the defendants in the United Kingdom is an acceptable form of alternative service, not prohibited by international agreement, and reasonably calculated to fulfill due process requirements").[4]

In addition, if the Court allows, Plaintiffs suggest publication of the pending action on a designated website, created for the purpose of providing notice to the unreachable Motion

---

[2] Based on Defendant Aware Choice Limited's company records, Ivan Hrechaniuk was born in 1994. Relying on this information, Plaintiffs identified two possible Facebook pages depending on the English transliteration of his name (Ivan Hrechaniuk or Ivan Grechanyuk).

[3] (1) Jared Goodyear, (2) Aware Choice Ltd; (3) Profit Media Group LP; (4) Trans-Konsalt MR Ltd; (5) Art Sea Group Ltd; (6) Marina Garda; and (7) Nataliya Los.

[4] *See also Tracfone Wireless v. Hernandez,* 126 F. Supp. 3d at 1365 (allowing the plaintiff to file a copy of FedEx proof of signature "as proof that service has been effectuated" on the defendant in Belize); *Fagan v. Cent. Bank of Cyprus*, 19-80239-CIV, 2019 WL 2410075, at *2 (S.D. Fla. June 7, 2019) (allowing service by mail for the British Virgin Islands); *TracFone Wireless, Inc. v. Unlimited PCS Inc.*, 279 F.R.D. 626, 631 (S.D. Fla. 2012) (allowing FedEx service of summons and complaint to Hong Kong defendant).

Defendants. This has been deemed an appropriate means of service by posting. *S.A.S. Jean Cassegrain v. accessoiresnet.info*, 17-61593-CV, 2017 WL 10742773, at *5 (S.D. Fla. Sept. 27, 2017) (granting plaintiffs motion to serve Chinese defendants via publication on the plaintiffs' website).[5]

Accordingly, with the Court's permission, Plaintiffs will create a website whereon copies of the Complaint, Amended Complaint, this Motion, and all other pleadings, documents, and orders issued in this action will be posted. The address for the website will be provided to Motion Defendants via their known e-mail accounts, social media accounts, and will be included as part of formal service of process and FedEx return receipts requested mail. Plaintiffs respectfully submit that alternative service by posting the Summonses, Complaint, and Amended Complaint on the Plaintiff's website will provide notice to Motion Defendants sufficient to meet the due process requirements for service of process pursuant to Federal Rule of Civil Procedure 4, apprise Motion Defendants of the pendency of this action, and afford Motion Defendants and any other interested parties an opportunity to present their answers and objections.

---

[5] *See NASCAR v. Does*, 584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) (in "acknowledging the realities of the twenty-first century and the information age, the Court determined that the most appropriate place for publication was [Plaintiff's Website].");  *MPL Comm'ns Ltd. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 20-cv-61418 (S.D. Fla. July 17, 2020) (Order granting alternative service via e-mail service and by posting on plaintiff's designated website); *Adidas AG v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 20-cv-61146 (S.D. Fla. June 16, 2020) (same); *Apple Corp. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 20-cv-60587 (S.D. Fla. Mar. 24, 2020) (same); *Chanel, Inc. v. 7creplicachanel.com*, No. 20-cv-60309 (S.D. Fla. Feb. 19, 2020) (same); *Louis Vuitton Malletier v. lv2014.skrar*, No. 19-cv-61015 (S.D. Fla. June 14, 2019) (same); *Fendi S.R.L. v. joe bag*, No. 19-cv-61356 (S.D. Fla. June 4, 2019) (same); s*ee also Richemont Int'l SA v. cartierlove2u.com*, No. 19-61968-CIV, 2019 U.S. Dist. LEXIS 170355 (S.D. Fla. Aug. 8, 2019) (same); *Malletier v. Individuals*, No. 19-61021-CIV, 2019 U.S. Dist. LEXIS 170354 (S.D. Fla. Apr. 26, 2019) (Hunt, J.) (same); *Parsons Xtreme Golf v. Individuals, P'ships & Unincorporated Ass'ns*, No. 19-60310-CIV, 2019 U.S. Dist. LEXIS 79075 (S.D. Fla. Feb. 7, 2019) (same).

**B.**     **Service of Process Via Electronic Means Is Not Prohibited by International Agreement.**

Service via-email, social media, FedEx (or other commercial mail couriers) return receipts, and posting on a designated website is not prohibited by international agreement. Courts in this Circuit routinely permit alternative service of process where, as here, opaque actors have eluded efforts at serving process, and waiting to effect service through the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention") is almost certain to occasion unreasonable delays. *See, e.g.*, *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) ("Courts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)."). In fact, in similar cases against crypto-asset exchanges, courts have recently granted motions for alternative service against entities and individuals that have likewise sought to evade service. *See In re Bibox Grp. Holdings Ltd. Sec. Litig.,* No. 20-CV-2807, 2020 WL 4586819, at *3 (S.D.N.Y. Aug. 10, 2020) (holding that service of crypto-asset exchange and related parties by email, social media, and mail to the registered agent of one of the entity defendants "does not violate the Hague Convention or applicable international law … [and] also comports with due process"); *Williams v. Kucoin*, 1:20-cv-02806-GBD (S.D.N.Y. Aug. 13, 2020), ECF No. 33 (granting plaintiff's motion for alternative service under comparable circumstances).

This Motion seeks alternate methods of service on Motion Defendants that have associated addresses in United Kingdom, Czech Republic, Cyprus, Republic of Korea (South Korea), Bulgaria, Ukraine, China, Hungary, Canada, and the United States[6]. *See* Table 1. All are

---

[6] Canada and the United States ("Conforming Countries") have not made any objections; therefore, the proposed methods of e-mail, social media messaging, FedEx return receipts requested, and publication are acceptable under the Hague Convention. *See Stat Med. Devices, Inc.* 2015 U.S. Dist. LEXIS 122000.

signatories to the Hague Convention.[7] Therefore, the Hague Convention will apply to all Motion Defendants who reside in these countries. The alternative means of service, such as e-mailing, FedEx return receipt mail, social media messaging, and publication are not prohibited by the Hague Service Convention unless a signatory nation has expressly objected to those means. *See Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, Case No. 15-cv-20590, 2015 U.S. Dist. LEXIS 122000 (S.D. Fla. Sept. 14, 2015) (noting that an objection to the alternative forms of service set forth in the Hague Convention is limited to the forms of service expressly objected to).[8] Article 10 of the Hague Convention allows service of process through means other than a signatory's Central Authority, such as "postal channels" and "judicial officers," provided the State of destination does not object to those means. *See* Hague Convention, Art. 10, 20 U.S.T. 361 (1969).[9]

None of the listed countries have expressly objected to service via e-mail, website posting, or social media messaging. Generally, "a court acting under Rule 4(f)(3) remains free to order alternative means of service that are not specifically referenced in Article [10]." *Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011); *see also WhosHere, Inc. v. Orun*, Case No. 13-cv-00526-AJT, 2014 U.S. Dist. LEXIS 22084, at *9 (E.D. Va. Feb. 20, 2014) (authorizing e-mail service, noting objection to means of service listed in Article 10 "is specifically limited to the enumerated means of service in Article 10.").

---

[7] *See* Convention done at the Hague Nov. 15, 1965, 1969, 20 U.S.T. 361
[8] *See also MPL Commc'ns Ltd. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 20-CIV-61418, 2020 WL 6572474, at *2 (S.D. Fla. July 17, 2020) (authorizing e-mail service and by posting on plaintiff's designated website, noting an objection to the alternative means of service provided by the Hague Convention is expressly limited to those means and does not represent an objection to other forms of service, such e-mail or posting).
[9] Czech Republic, Bulgaria, Ukraine, Republic of Korea (also known as South Korea), China, Hungary, and the United Kingdom ("Objecting Countries") have objected to the alternative means of service outlined in Article 10 of the Hague Convention. However, that objection is specifically limited to the means of service enumerated in Article 10. *See* Hague Convention, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17.

Moreover, an objection to the alternative means of service provided in Article 10 does not represent a *per se* objection to other forms of service, such as e-mail or website posting. *See In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 434, 437 (S.D.N.Y. 2009) (requiring express objection to alternative method of service by signatory nation to preclude that particular means of service). Consequently, the Objecting Countries' general challenge to alternative service under Article 10 does not prevent this Court from authorizing alternative service of process via e-mail, website posting, or social media messaging.[10]

Furthermore, Canada, Hong Kong, and the United Kingdom do not specifically object to Article 10(a), which authorizes the transmission of judicial documents by "postal channels." Therefore, this Court may authorize service by FedEx (or other commercial mail couriers) with respect to those Motion Defendants that reside in these three countries. *See TracFone Wireless, Inc. v. Unlimited PCS Inc.*, 279 F.R.D. at 631 (finding that FedEx service of summons and complaint to Hong Kong defendant was a permissible postal channel under Article 10(a)); *Strax Americas, Inc. v. Tech 21 Licensing Ltd.*, 16-25369-CIV, 2017 WL 5953117, at *2 (S.D. Fla. Mar. 23, 2017) (holding that service via FedEx on the United Kingdom defendants was an acceptable form of alternative service, not prohibited by international agreement, and reasonably

---

[10] *See, e.g.*, *Gurung*, 279 F.R.D. at 220 (approving service of process on foreign defendants via e-mail despite India's objection to Article 10, stating that an "objection to service through postal channels does not amount to an express rejection of service via electronic mail."); *Stat Med. Devices, Inc.*, 2015 U.S. Dist. LEXIS 122000, at *8–9 (permitting service of process on foreign defendants via e-mail and substituted service on domestic counsel despite Poland's objection to Article 10, noting "This Court and many other federal courts have permitted service by electronic mail and determined that an objection to Article 10 of the Hague Convention . . . does not equate to an express objection to service via electronic mail."); *PCCare247 Inc.*, 2013 U.S. Dist. LEXIS 31969, at *10 (authorizing service of process via e-mail and Facebook, explaining that "Numerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10."); *WhosHere, Inc.*, 2014 U.S. Dist. LEXIS 22084 (authorizing service of process on foreign defendants via e-mail despite Turkey's objection to Article 10).

calculated to fulfill due process requirements); *TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. at 690–91 (finding that service upon a Canadian resident via FedEx is permissible pursuant to Rule 4(f)(2)(C)(ii) because Canada does not object to Article (10)(a) of the Hague Convention).

Although possible that these foreign addresses, much like many of the United States addresses, may not be linked to the Motion Defendants' residences or places of business, there is good cause for alternative service to reasonably place the Motion Defendants on notice given the online nature of the fraud and the number of victims.[11] For those Motion Defendants that cannot be found at the associated addresses—identified by Plaintiffs through the Motion Defendants' prior conduct in wiring funds through shell companies, creating trusts, and listed addresses on company records—the Hague Convention is inapplicable given the lack of information as to these Motion Defendants' current location. *See* The Hague Service Convention, art. I, Nov. 15, 1965, 20 U.S.T. 361 ("This Convention shall not apply where the address of the person to be served with the document is not known"); *Prediction Co. LLC v. Rajgarhia*, No. 09-cv-07459 (SAS), 2010 U.S. Dist. Lexis 26536, *5 (S.D.N.Y. Mar. 22, 2010) ("[I]t is worth observing the inapplicability of the Hague Convention . . . because [defendant's] address is not known to [plaintiff]"). Plaintiffs are unaware of any other international agreement which could potentially prohibit service via email, FedEx (or other commercial mail couriers) return receipts, social media messaging, or publication.

When faced with such a situation, the Federal Rules of Civil Procedure allow the Court to approve reasonable alternatives to the costly, time consuming, and possibly fruitless procedure of attempting service in foreign jurisdictions—where such reasonable alternatives are not prohibited by an international agreement. *See, e.g.*, *TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. at 694 (authorizing alternative service pursuant to Rule 4(f)(3) via, inter alia, electronic message).

---

[11] To date, undersigned counsel has been contacted by over 700 victims as putative class members in this action.

Consequently, to expedite this litigation, reduce the costs associated with it, and ensure the unserved Motion Defendants cannot escape liability, Plaintiffs now turn to the Court for relief and respectfully request leave to serve the unserved Motion Defendants via e-mail, social media messaging, FedEx (or other commercial mail couriers) return receipt mail, and web posting, which are reasonably designed to afford them notice of the action.

### C. The Facts and Circumstances Warrant Service by Email, Social Media, Web Posting, and Publication under Rule 4 of the Federal Rules of Civil Procedure.

The facts and circumstances warrant exercise of the Court's discretion under Fed. R. Civ. P. 4(f). Even though Plaintiffs are not required to attempt other methods of service before seeking relief under Fed. R. Civ. P. 4(f), Plaintiffs have been unable to locate a valid address for any individual reasonably believed to be the operator of the Internet websites at issue, despite diligent, good faith efforts. These efforts have included, but are not limited to, (1) investigating company records for all known addresses associated with the Motion Defendants; and (2) running sophisticated internet searches for address or other contact information. Plaintiffs have also demonstrated that they identified valid email addresses or social media pages for each Motion Defendant. Given Plaintiffs' extensive efforts to serve Motion Defendants at their physical addresses, the facts and circumstances warrant allowing service on Motion Defendants by email, social media, signed FedEx (or other commercial mail couriers) return receipts return receipts, and publication.

### <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs, Ryan Birmingham, *et al.*, respectfully request this Court grant the present motion and authorize service of each Summons, Complaint, as well as any forthcoming Amended Complaint, and all filing and discovery in this matter upon each Motion Defendant in this action via any of the following methods at the contact information listed above:

(a)     Via e-mail;

(b)     Via social media;

(c)     Via Facebook, Instagram, or LinkedIn profile;

(d)     Via signed FedEx (or other commercial mail couriers) return receipt mail; and

(e)     Publication on the Plaintiffs designed website.

### 7.1(A)(3) CERTIFICATE OF CONFERRAL

The undersigned conferred or attempted to confer with all parties who have appeared in this action. Nattpemol Krinara, on behalf of herself and Papahratsorn Raviratporn, Boonruk Raumkit Co., Ltd, and IT Outsourcing Co., Ltd. (collectively, "Thai Defendants"), stated they oppose the publication of the summons and complaint on a website. Defendants Timothy Stubbs and ePayments Systems Ltd ("EPS") object to the Motion's characterization of their conduct. However, the Thai Defendants, Stubbs, and EPS do not otherwise oppose Plaintiffs' requested relief.

The undersigned attempted to confer with Defendants Borys Konovalenko and Anna Shymko via email on February 23 at 12:41 PM EST and March 1, 2022 at 12:57 PM EST, using email addresses Konovalenko and Shymko had either provided to the Court or used for communicating with the undersigned. Neither Konovalenko nor Shymko responded. Given that both Konovalenko and Shymko are Ukrainian and are known to travel to Ukraine from time to time, it is possible the Russian invasion of Ukraine may have disrupted their ability to communicate.

Respectfully submitted,

Dated: March 11, 2022                 /s/ *Dennis González*

                                      Dennis A. González
                                      Dennis.gonzalez@hklaw.com
                                      Florida Bar No. 1032050
                                      Jose A. Casal

Jose.Casal@hklaw.com
Florida Bar No. 767522
Sydney B. Alexander
Florida Bar No. 1019569
Sydney.Alexander@hklaw.com
Andrew Balthazor
Andrew.Balthazor@hklaw.com
Florida Bar No. 1019544
Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799

Warren E. Gluck (*pro hac vice*)
New York Bar No. 4701421
Warren.Gluck@hklaw.com
Matthew R. DiBlasi (*pro hac vice*)
New York Bar No. 4237475
Matthew.DiBlasi@hklaw.com
Ruarri M. Rogan (*pro hac vice*)
New York Bar No. 5800107
Ruarri.Rogan@hklaw.com
Holland & Knight LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 513-3200
Facsimile: (212) 385-9010
*Attorneys for Plaintiffs*