United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Ryan Birmingham and others,<br>Plaintiffs,<br><br>v.<br><br>ROFX.net and others, Defendants. | )<br>)<br>)<br>)  Civil Action No. 21-23472-Civ-Scola<br>)<br>) |

## Order on Motion to Dismiss

This matter is before the Court upon the motion to dismiss filed by
Defendant ePayments Systems Ltd. ("EPS"). (ECF No. 94.) The Plaintiffs are a
group of investors who say they were defrauded by a web of actors tied to
RoFx.net ("RoFx"). RoFx, they say, held itself out to be a foreign exchange
platform motored by artificial intelligence that turned out to be nothing more
than a sham. The Defendants are over forty individuals and entities said to be
part of RoFx's scheme.

Among them is EPS, a money transmitter based out of the United
Kingdom. (*See* Am. Compl. ¶ 133, ECF No. 64.) RoFx paid EPS a fee for
receiving certain deposits as "directed by the RoFx Operators." (*Id.* at ¶¶ 133-
39). The Plaintiffs assert seven counts against EPS: (1) RICO enterprise under
18 U.S.C. § 1962(c); (2) RICO conspiracy under 18 U.S.C. § 1962(d); (3)
conspiracy to commit fraud; (4) aiding and abetting fraud; (5) conspiracy to
commit conversion; (6) aiding and abetting conversion; and (7) unjust
enrichment.

EPS challenges the Plaintiffs' amended complaint on multiple grounds
but most importantly argues that the Court lacks personal jurisdiction over it.
*See* Fed. R. Civ. P. 12(b)(2). The Court agrees and **grants** EPS's motion on that
basis. (**ECF No. 94**.)

### 1. Legal Standard

"A plaintiff seeking the exercise of personal jurisdiction over a
nonresident defendant bears the initial burden of alleging in the complaint
sufficient facts to make out a prima facie case of jurisdiction." *United Techs.
Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir. 2009). A federal court's exercise
of personal jurisdiction must: "(1) be appropriate under the state long-arm
statute and (2) not violate the Due Process Clause of the Fourteenth
Amendment[.]" *Id.*

### 2. Florida's Long-Arm Statute

The Plaintiffs say the Court has personal jurisdiction over EPS pursuant to Florida Statutes § 48.193(1)(a)(2). (Opp. 4, ECF No. 5.) That provision does not require the "tortfeasor's physical presence in Florida[.]" *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1168 (11th Cir. 2005) (cleaned up). In conspiracy cases, it "can support personal jurisdiction over any alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom personal jurisdiction is sought individually committed no act in, or had no relevant contact with, Florida." *Mazer*, 556 F.3d at 1281-82.

For the Court to assert personal jurisdiction on such grounds, though, the Plaintiffs must allege viable facts from which the Court can reasonably infer that EPS was a co-conspirator. In other words, that EPS entered into a "conspiracy either engineered in Florida or [one] pursuant to which a tortious act in furtherance was committed in Florida." *See id.* at 1283.

They do not. According to the Plaintiffs, EPS "would receive funds from RoFx customers and route the illicit funds as directed by the RoFx Operators— with little or no scrutiny. In return, [EPS] would receive an 'affiliate fee.'" (Am. Compl. ¶ 135.) The crux of EPS's involvement seems to be that it "received funds from RoFx customers totaling at least €34,997 and $7,500 among 11 transactions." (*Id.* ¶¶ 137-38, 203.b.) These statements do not allow a reasonable inference that EPS conspired with RoFx. Although RoFx may have used EPS to further its own aims, the amended complaint falls short of establishing that EPS played a "conscious role" within RoFx's conspiracy by "agree[ing] to conceal the flow of illicit proceeds from the RoFx Scheme." (Opp. 5.)

The Eleventh Circuit's analysis in *Mazer* is instructive. 556 F.3d at 1282. There, the court found that personal jurisdiction was not warranted over a foreign corporation accused of stealing a competitor's corporate records. *Id.* The *Mazer* plaintiff pointed to the fact that the foreign corporation's managing director traveled to Florida during the time period in which the corporate records were stolen. *Id.* Citing this overlap in time, the plaintiff posited that the foreign corporation's managing director was involved in a conspiracy to steal the records. *Id.* However, the Eleventh Circuit found that this theory "require[d] too great a speculative leap." *Id.* In fact, it noted that the complaint could yield "other inferences," as can the amended complaint here.

Although the Plaintiffs say their amended complaint details "EPS's conscious role" within RoFx's scheme (Opp. 5), it does not. (*See* Am. Compl.

¶¶ 128-29, 135-39, 229.) The amended complaint merely spells out the multiple ways in which RoFx used EPS. Beyond the points discussed above, the Plaintiffs also point the Court to paragraph 229 of the amended complaint, where they say that Plaintiff Roman Leonov received an email from RoFx operators representing EPS to be its "brokerage subdivision." (Am. Compl. ¶ 229.) But again, this only avers how RoFx used EPS.

The fact of the matter is that the Plaintiffs ask the Court to make an inferential leap as to EPS's awareness of its role in RoFx's scheme. The Plaintiffs point to the fact that RoFx used a shell entity to wire funds to EPS after RoFx customers forwarded funds to it individually. (*Id.* ¶¶ 137-39.) This, they say, is proof that EPS "knew its role receiving customer funds [would be] redundant and unnecessary if the transactions were [actually] legitimate, and that EPS was being paid merely to obfuscate the flow of funds for illicit transactions." (Opp. 12.) The Plaintiffs also cite to "EPS's apparent cessation of performing money laundering transactions in or around July 2019, [which] timed concurrently with RoFx Operators' activation of [additional shell companies.]" (*Id.*) Additionally, they point to the fact that the United Kingdom Control Authority suspended EPS for lapses in its anti-money laundering systems. (*Id.* at 3.) Taken together, these points certainly *could* indicate a conspiracy but concluding that they *should* be seen together requires an inferential leap too far.

Conclusory allegations concerning the existence of a conspiracy are "insufficient to establish a prima facie case of personal jurisdiction[.]" *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006). The Plaintiffs' factual allegations do not raise a reasonable inference that EPS was in cahoots with RoFx. The allegations instead much more readily allow for the reasonable inference that RoFx exploited EPS to further its purported scheme. To be sure, EPS was a money transmitter that advertised itself to businesses generally. (Am. Compl. ¶ 133.)  The fact that EPS charged RoFx a fee for its services is proof of a business relationship, not a conspiracy. Against this backdrop, the Plaintiffs cannot rely on EPS' purported participation in a conspiracy with RoFx as the basis for personal jurisdiction under Section 48.193(1)(a)(2).

The Plaintiffs also rely on *Horizon*, 421 F.3d 1162, to argue that personal jurisdiction is appropriate because EPS produced an injury in Florida. (Opp. 5, 6.) In that decision, the Eleventh Circuit found that Florida courts recognize personal jurisdiction over out-of-state defendants that "produce an injury in Florida." *Horizon*, 421 F.3d at 1168. It upheld personal jurisdiction "over an out-of-state auditing company that . . . telephonically contacted a Florida-based partnership and electronically accessed its computer files." *Id.* at 1164. That ruling involved factors not present here: *first*, the existence of these out-

of-state communications geared toward Florida, and *second*, a "connexity" between the out-of-state communication and the cause of action itself "such that the cause of action would depend upon proof of either the existence or the content of any of the communications into Florida." *See id.* at 1168 (cleaned up). Absent such communications geared toward Florida and any "connexity" between those communications and the Plaintiffs' cause of action against EPS, the Court finds the Plaintiffs' reliance on *Horizon* unavailing. Accordingly, personal jurisdiction under Florida's long-arm statute fails.

### 3. Due Process Under the Fourteenth Amendment

The Court's assertion of personal jurisdiction over EPS would also not comport with the Fourteenth Amendment's Due Process Clause. The Eleventh Circuit applies a three-part test when analyzing whether an exercise of specific jurisdiction comports with due process. It considers: "(1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice." *Tavakoli v. Doronin*, No. 18-21592-CIV, 2019 WL 1242669, at *10 (S.D. Fla. Mar. 18, 2019) (Altonaga, J.) (citing *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (cleaned up)).

Absent from the amended complaint is any mention of particular instances in which EPS purposefully targeted Florida consumers, communicated with persons in Florida, or otherwise "purposefully availed" itself of the privilege of conducting business in the state. The Plaintiffs mention EPS' direct receipt of client funds but they do not specify if any such clients were Florida-based. (*See* Am. Compl. ¶¶ 137-38.) Although the Plaintiffs rely on *Tavakoli* to impute others' Florida contacts onto EPS, the Court finds that case distinguishable. There, unlike here, the plaintiffs pled the relevant defendant's participation in concrete events that took place in Florida to further a conspiracy. *See Tavakoli*, 2019 WL 1242669 at *10 ("Eliasch traveled to Miami for the April 22, 2014 Board meeting, stayed with Doronin at his Miami residence for three to four days around the date of the meeting, had dinner with Doronin in Miami to discuss matters related to Aman Resorts prior to the meeting, and then participated in the PHRGL Board meeting in Miami.")

The *Tavokoli* court imputed the above defendant's Florida onto a foreign co-defendant corporate entity that had no Florida contacts of its own. *See id.* at *11-*12. But importantly, there was an immediate connection between the corporate entity and the defendant with the Florida contacts—he owned 100%

of it. *See Tavakoli*, 2019 WL 1242669 at *3. By contrast, RoFx and EPS are separate entities. Nowhere does the amended complaint allege the existence of Florida contacts undertaken by any of EPS's principals to allow for the sort of imputed contacts found in *Tavakoli*. Thus, the Plaintiffs fail to show how EPS "purposefully availed" itself of Florida either directly or imputably.

Last, the Plaintiffs suggest that the Court should invoke Federal Rule of Civil Procedure 4(k)(2) as a basis for asserting personal jurisdiction over EPS. "But courts rarely invoke jurisdiction under Rule 4(k)(2)." *Noble House, LLC v. Underwriters at Lloyd's, London*, 2021 WL 896219, at *5 (S.D. Fla. Mar. 3, 2021) (Singhal, J.). Further, the Plaintiffs have not put forth any evidence that EPS "is not subject to jurisdiction in any state's courts of general jurisdiction," which is required to invoke the rule. Fed. R. Civ. P. 4(k)(2)(A).

Accordingly, the Court **grants** EPS's motion (**ECF No. 94**) for want of personal jurisdiction.

**Done and ordered** at Miami, Florida, on May 26, 2022.

Robert N. Scola, Jr.
United States District Judge