UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:21-cv-23472-RNS

Ryan Birmingham, Roman Leonov, Steven Hansen,
Mitchell Parent, and Jonathan Zarley, individually
and on behalf of all others similarly situated,

    Plaintiffs,

v.

Alex Doe, *et al.*,

    Defendants.

_____/

**PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT AS TO LIABILITY**

    Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, Ryan Birmingham, Roman Leonov, Steven Hansen, Mitchell Parent, Jonathan Zarley, and others similarly situated persons (collectively "Plaintiffs") respectfully move this Court for entry of default judgment as to liability only against the Defendant Mayon Solutions, LLC ("Mayon USA").

**RELEVANT FACTUAL BACKGROUND**

    Between 2018 and 2021, an informal association of Ukrainians (the "RoFx Operators") operated a phony foreign exchange trading service via RoFx.net—a website hosted in Jacksonville, Florida. Am. Compl. ¶¶ 1, 3–4, 17–18, 121. The RoFx Operators claimed to have artificially intelligent software that could conduct foreign exchange trading on behalf of customers; the customers needed only to send funds to the RoFx Operators and, in return, the customers were promised passive income. *Id.* ¶ 2. The RoFx Operators perpetrated this years-long fraud (the "RoFx Scheme") using a sophisticated website, active customer service team, invoices, account statements, foreign exchange activity reported on third-party websites, and promotions via advertisements and sponsored articles—and even allowed some customers to withdraw limited funds. *Id.* ¶¶ 2, 61–125. As explained in the Amended Complaint, all of this was elaborate stage dressing: the RoFx Operators never conducted foreign exchange trading and, instead, pocketed the customers' funds. *Id.* ¶¶ 102–27. By the time the RoFx.net website went dark in September 2021—and the RoFx Operators stopped responding to customers—the RoFx Operators had stolen at least $75 million from customers. *Id.* ¶¶ 126–27.

    Such a large amount of stolen money does not disappear without help. The RoFx Operators created an intricate and international network of shell companies and relationships with financial

intermediaries to launder the illicit funds (the "Money Laundering Enterprise"). *Id.* ¶¶ 128–29. The Money Laundering Enterprise consists of a set of companies directly receiving customer funds ("Front Companies"); another set of companies with existing cross-border transaction volume that would obfuscate the flow of funds between RoFx customers, Front Companies, and ultimately to the RoFx Operators ("Layering Companies"); and the final level of companies acting as the exit point for the laundered funds ("Cash-Out Companies"). *Id.* To distance themselves from the various sets of companies, the RoFx Operators collaborated with a set of individuals and entities ("Company Organizers") who were tasked with creating, acquiring, and managing Front Companies and transferring funds throughout the Money Laundering Enterprise. *Id.* The Money Laundering Enterprise began operating as early as January 2018 and continues to this day, with Defendants opening and closing entities and shifting transaction volume as needed to evade regulatory scrutiny. *See id.* ¶¶ 128–30, 130–208, 261, 265.

## RELEVANT PROCEDURAL HISTORY

Plaintiffs filed the present class action on September 29, 2021, after the RoFx Operators disappeared with their ill-gotten gains. Plaintiffs amended their complaint on February 14, 2022, with the Court's leave, bringing several claims against Mayon USA: Violation of the Racketeering Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c) (Count I); RICO Conspiracy, 18 U.S.C. § 1962(d) (Count II); Conspiracy to Commit Fraud (Count IV); Aiding and Abetting Fraud (Count V); Conspiracy to Commit Conversion (Count VII); and Aiding and Abetting Conversion (Count VIII). *See generally id.* After Mayon USA failed to appear, answer, or otherwise plead to the Amended Complaint, the Clerk entered default against it on June 16, 2022 [ECF No. 168]. Additionally, pursuant to 50 U.S.C. § 3931 and in support of their Motion for Default Judgment, Plaintiffs' counsel Dennis A. González submits a declaration attesting to the Defendant's military service status—attached hereto as **Exhibit A**.

## MEMORANDUM OF LAW

### I. Standard for Effecting Default Judgment

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a default judgment against a properly-served defendant who fails to plead in response to a complaint or otherwise appear. *Burger King Corp. v. Huynh*, No. 11-22602-CIV, 2011 WL 6190163, at *3 (S.D. Fla. Dec. 5, 2011). Although the mere entry of a default by the Clerk does not, in itself, warrant the entry of a default judgment, the Court may do so if it finds sufficient legal basis in the

pleadings. *See Tyco Fire & Sec. LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). A "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," as set forth in the operative complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). However, the defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. *See Goldman v. HSBC Bank USA, Nat'l Ass'n*, No. 13-81271-CIV, 2015 WL 1782241, at *1 (S.D. Fla. Mar. 24, 2015). "[B]efore entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint . . . actually state a substantive cause of action and there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Hayes v. Asset Acceptance*, No. 13-81143-CIV, 2014 WL 1767106, at *1 (S.D. Fla. May 2, 2014) (internal quotation marks omitted) (quoting *Tyco Fire & Sec., LLC*, 218 F. App'x at 863).

**II.   Count I: RICO Claim**

To establish a civil RICO claim, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) that caused injury to business or property." *Allstate Ins. Co. v. Palterovich*, 653 F. Supp. 2d 1306, 1315 (S.D. Fla. 2009) (internal citation omitted).

   A. RICO Enterprise

      1. Common Purpose

Civil RICO liability requires that a plaintiff demonstrate the existence of a RICO enterprise that "has a common goal." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1283 (11th Cir. 2006); *see also Allstate Ins. Co.*, 653 F. Supp. 2d at 1315. An enterprise includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has interpreted the term "enterprise" broadly in the civil RICO context, providing that it encompasses both legal entities and "illegitimate associations-in-fact." *Rusello v. U.S.*, 464 U.S. 16, 24 (1983); *see U.S. v. Goldin Indus., Inc.*, 219 F.3d 1271, 1275 (11th Cir. 2000) (explaining that an enterprise is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."). Whether an "association of individual entities" constitutes a "RICO enterprise" turns on whether "the association of individual entities, however loose or informal . . . furnishes a vehicle for the commission of two or more predicate crimes."

*Goldin Indus., Inc.*, 219 F.3d at 1275; *see, e.g.*, *Fagan v. Central Bank of Cyprus*, No. 19-80239-CIV, 2021 WL 2845034, at *3 (S.D. Fla. June 28, 2021), *report and recommendation adopted*, NO. 9:19-CV-80239, 2021 WL 2915109 (S.D. Fla. July 12, 2021) (finding that a RICO enterprise was alleged in motion for default judgment where defendants had common purpose of laundering money and retaining, withholding, converting, stealing, and refusing to account for money given by defrauded plaintiffs).

In the Amended Complaint, the Plaintiffs alleged Mayon USA was part of the RoFx Scheme, an enterprise with a common purpose "to hide, launder, or otherwise wrongfully retain the proceeds of the RoFx Scheme." Am. Compl. ¶ 261. The Plaintiffs alleged that the enterprise to which Mayon USA belonged consisted of three types of entities—Front Companies, Layering Companies, and Cash-Out Companies—working in tandem to accept payments from the defrauded Plaintiffs, obscure the RoFx Scheme, and ultimately distribute the funds to the RoFx Operators after channeling them through a global network of international banks, shell companies, and cryptocurrency exchanges. *Id.* ¶¶ 261–65. Together, these entities, the agents behind them, and the RoFx Operators formed an "illegitimate association-in-fact" dedicated to the common enterprise of laundering money given by the defrauded Plaintiffs. *Id.* ¶ 263; *Rusello*, 464 U.S. at 24 (explaining how the RICO statute's definition of the term "enterprise" includes both legal entities and "illegitimate associations-in fact"). As detailed below, Mayon USA agreed to participate in the Money Laundering Enterprise.

2. Operation or Management

Civil RICO liability requires that the defendant "must participate in the operation or management of the enterprise itself" and "'must have some part in directing' the affairs of the enterprise." *Williams*, 465 F.3d at 1284–85 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)). A defendant with only a tenuous connection to the enterprise may nonetheless satisfy the operation or management test. *U.S. v. Sterrett*, 55 F.3d 1525, 1542, 1548 (11th Cir. 1995) ("Because the RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise, even lower-rung participants or virtual outsiders may, by virtue of their conduct, find themselves ensnared."). With respect to the enterprise, the defendant may be an insider or an outsider—one who is "merely associated with an enterprise—who participate[s] directly and indirectly in the enterprise's affairs." *U.S. v. Watchmaker*, 761 F.2d 1459, 1476 (11th Cir. 1985).

Mayon USA played a key role in establishing and perpetuating a coordinated campaign of money laundering and wire fraud. Am. Compl. ¶¶ 161–70. Between at least April 2019 and March 2021, Mayon USA served as a vehicle to acquire and service Front Companies Easy Com, LLC ("Easy Com"), Notus, LLC ("Notus"), ShopoStar, LLC ("ShopoStar"), and Global E-Advantages, LLC ("Global E-Advantages")for the RoFx Money Laundering Enterprise. *Id.* ¶¶ 167–68, 170(a)–(b); Ex. 7.

  B. Predicate Acts

To succeed, a civil RICO claim "must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts." *Republic of Pan. V. BCCI Holdings (Lux) S.A.*, 119 F.3d 1935, 1949 (11th Cir. 1997). A civil RICO claim predicated on fraud generally must accord with Rule 9(b)'s heightened pleading standard. *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007). Such a claim must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the [d]efendants gained by the alleged fraud." *Id.* at 1316–17. In a case with multiple defendants, the plaintiff must "plead fraud with the requisite specificity as to each of the [defendants]." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997).

  1. Predicate Acts: Money Laundering

Money laundering in violation of 18 U.S.C. § 1956 "may properly be charged as a predicate act under a Section 1962(d) enterprise conspiracy." *U.S. v. Battle*, 473 F. Supp. 2d 1185, 1196 (S.D. Fla. 2006); *see Liquidation of Com'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1355–56 (11th Cir. 2008) (holding money laundering allegations in a civil RICO claim need not satisfy the heightened particularity requirement of Federal Rule of Civil Procedure Rule 9(b)).

  a. 18 U.S.C. § 1956(a)(1)

"When a plaintiff alleges money laundering under 18 U.S.C. § 1956(a)(1) as a predicate act for a civil RICO claim, the plaintiff must first set forth facts showing (1) that the defendant(s) conducted or attempted to conduct a financial transaction; (2) that the transaction involved the proceeds of 'specified unlawful activity'; and (3) that the defendant(s) knew the proceeds were from some form of unlawful activity. The allegations must then satisfy either § 1956(a)(1)(A) or

(a)(1)(B)." *Bryan v. Countrywide Home Loans*, No. 8:08-cv-794-T-23EAJ, 2008 WL 4790660, at *3 (M.D. Fla. Oct. 27, 2008) (quoting 18 U.S.C. § 1956). A plaintiff may satisfy § 1956(a)(1)(A)(i) by showing that the defendant acted "with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(A)(i). A plaintiff may satisfy § 1956(a)(1)(B)(i) by showing that the defendant engaged in the activity knowing that the transaction was wholly or partially designed "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i).

In the Amended Complaint, the Plaintiffs sufficiently alleged that Mayon USA violated both 18 U.S.C. § 1956(a)(1)(A)(i) and § 1956(a)(1)(B)(i). Mayon USA conducted financial transactions through the Front Companies it provided and serviced on behalf of the RoFx Operators in which they collectively sent hundreds of thousands of RoFx customer funds to promote and perpetuate the RoFx scheme. Am. Compl. ¶¶ 172(d), 177(c); *see id.* Part II. The proceeds involved in the transactions were in fact derived from some form of unlawful activity— namely, the RoFx Scheme described in paragraphs 61 to 127 of the Amended Complaint. *Id.* ¶ 270. Mayon USA knew that the proceeds were from specified unlawful activity within the meaning of 18 U.S.C. § 1956(a)(1) and (c)(7). *Id.* ¶ 269. Mayon USA acted with the intent to promote the carrying on of the RoFx Scheme in violation of 18 U.S.C. § 1956(a)(1)(A)(i). *Id.* ¶ 277. Additionally, Mayon USA engaged in the activity knowing that the transaction was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity. *Id.* ¶ 271; 18 U.S.C. § 1956(a)(1)(B)(i). Therefore, the Plaintiffs established that Mayon USA satisfied each of the required elements of 18 U.S.C. § 1956(a)(1)(A)(i) and 18 U.S.C. § 1956(a)(1)(B)(i).

    b. <u>18 U.S.C. § 1957</u>

Section 1957 makes it an offense for a person to "knowingly engage[] or attempt to engage[] in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity . . . ." 18 U.S.C. § 1957(a). Such transaction must take place either in the United States or outside of the United States with the participation of a United States person as defined in 18 U.S.C. § 3077. 18 U.S.C. § 1957(d).

In the Complaint, the Plaintiffs sufficiently alleged that Mayon USA knowingly engaged monetary transactions in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity within the meaning of 18 U.S.C. § 1957(a) and (f)(3)—

namely, the RoFx Scheme described in paragraphs 61 to 127 of the Amended Complaint. Am. Comp. ¶ 286. Specifically, Mayon USA engaged in 18 monetary transactions in property criminally derived from the RoFx Scheme totaling $729,904.00. Ex. 7. These transactions affected interstate and foreign commerce by: (a) depositing proceeds of specified unlawful activity in financial institutions in the United States; or (b) involving the use of financial institutions which are engaged in, or the activities of which affect, interstate or foreign commerce. *Id.* ¶ 287. Each monetary transaction either (a) took place in the United States, or (b) took place outside of the United States and at least one Defendant is a "United States" person within the meaning of 18 U.S.C. § 1957(d)(2) and § 3077. *Id.* ¶ 288. Therefore, the Plaintiffs established that Mayon USA satisfied each of the required elements of 18 U.S.C. § 1957.

2. Predicate Acts: Interstate Transportation of Stolen Property

Acts indictable under 18 U.S.C. § 2315 may be predicate acts for RICO purposes. 18 U.S.C. § 1961(1)(B). Section 2315 makes it a crime for a person to knowingly receive, possess, conceal, sell, or dispose of any unlawfully converted or taken goods, wares, merchandise, securities, or money greater than or equal to $5,000 in value. 18 U.S.C. § 2315.

Mayon USA received, possessed, concealed, sold, or disposed of funds unlawfully derived from RoFx customers who fell victim to the RoFx Scheme. Am. Compl. ¶ 293. Specifically, Mayon USA, incorporated in New Hampshire, received at least $729,904.00 from Delaware-incorporated Global E-Advantages and Colorado-incorporated Notus. Ex. 7. Mayon USA knew that the proceeds were the products of illicit activity. Am. Compl. ¶ 294. Therefore, the Plaintiffs established that Mayon USA satisfied each of the required elements of sections 2314 and 2315.

3. Predicate Acts: Wire Fraud

Wire fraud, indictable under 18 U.S.C. § 1343, suffices as a predicate act for RICO purposes. 18 U.S.C. § 1961(1)(B). A plaintiff bringing a RICO claim predicated on wire fraud must comply with Rule 9(b)'s particularity standard. *Viridis Corp. v. TCA Global Credit Master Fund, LP*, 155 F. Supp. 3d 1344, 1361 (S.D. Fla. 2015). "In order to bring a RICO claim where mail or wire fraud serves as the predicate activity, it is necessary to show that (1) the defendant intentionally participated in a scheme to defraud another of money or property, (2) the defendant used the mails or wires in furtherance of that scheme, and (3) the plaintiff relied to his detriment on the defendant's misrepresentations." *Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354, 1359 (11th Cir. 2004).

In the Amended Complaint, the Plaintiffs sufficiently alleged that Mayon USA committed acts of wire fraud in violation of 18 U.S.C. § 1343. Am. Compl. ¶ 295. With specific intent to defraud, Mayon USA knowingly devised or participated in a scheme to defraud the RoFx customers of money by means of material misstatements and omissions. *Id.* ¶ 296. These material misstatements and omissions provided that the Plaintiffs' contributions would (1) be utilized by RoFx's forex robot trading platform to make trades on behalf of Plaintiffs and for their benefit, (2) be committed to foreign exchange trading so Plaintiffs could receive a return on investment in the form of a percentage of RoFx's daily trading profit, (3) remain in each respective Plaintiffs' accounts for their own use, (4) increase in value because the RoFx Scheme would be partnering with Warren Buffett and Berkshire Hathaway, and (5) be withdrawable by Plaintiffs at their discretion. *Id.* ¶ 296(a)–(e). Mayon USA transmitted, or caused to be transmitted, communications by means of wire in interstate or foreign commerce—specifically, 18 illicit transactions via wire. *Id.* ¶¶ 203–09, 298; Ex. 7. Therefore, the Plaintiffs established that Mayon USA satisfied each of the required elements of 18 U.S.C. § 1343.

C. Pattern of Racketeering

To state claim under § 1962(c), a plaintiff must allege that the defendant engaged in a "pattern of racketeering activity." 18 U.S.C. § 1962(c). To successfully allege such a pattern, a plaintiff must show: "(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Jackson v. Bellsouth Telecomm.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (emphasis in original). The "continuity" required for a pattern of racketeering can be either close-ended or open-ended. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989). A RICO plaintiff establishes "open-ended continuity" by showing "either (a) that there is a specific threat of repetition of the racketeering acts extending indefinitely into the future or (b) that the racketeering acts are part of the defendant's regular way of doing business." *Fagan*, 2021 WL 2845034, at *4 (citing *H.J. Inc.*, 492 U.S. at 241–42). A RICO plaintiff establishes "close-ended continuity" by showing that a defendant committed "repeated predicate acts over a closed but substantial period of time that demonstrates a defendant's long-term criminal activity." *Id.* "There is no bright-line rule that defines exactly how long or over what period the predicate acts must occur in order for them to be considered substantial." *Fernandez de Cordoba v. Flores*, 2018 WL 1830805, No. 17-20122-CV, at *4 (S.D. Fla. Jan. 10, 2018) (finding that a motion for default

judgment failed to allege close-ended continuity where predicate acts, including money laundering, occurred over a one-month period); *Jackson*, 372 F.3d at 1267 (finding that RICO schemes with lifespans of nine months or less fail to establish close-ended continuity). Rather, whether the requisite continuity exists is a case-specific inquiry, and courts may "consider the number of victims, number of racketeering acts, variety of racketeering acts, whether the injuries were distinct, complexity and size of the scheme, and nature or character of the enterprise or unlawful activity." *Magnifico v. Villanueva*, 783 F. Supp. 2d 1217, 1229 (S.D. Fla. 2011) (internal quotation omitted) (finding an 18-month period sufficient to establish closed-ended continuity).

In the Amended Complaint, the Plaintiffs sufficiently alleged that Mayon USA participated in a pattern of racketeering within the definition of § 1962(c). Am. Compl. ¶ 299. As outlined above, *supra* Section II.B, Mayon USA committed the following predicate acts: (1) money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i); (2) money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i); (3) monetary transactions in property derived from unlawful activity in violation of 18 U.S.C. § 1957; (4) receipt, possession, concealment, sale, or disposal of stolen, converted, or taken goods in violation of 18 U.S.C. § 2315; and (5) wire fraud in violation of 18 U.S.C. § 1343. *Id.* ¶¶ 267–98. These predicate acts were interrelated: each furthered the receipt, laundering, and hiding of funds criminally derived from the defrauded RoFx customers. *Id.* ¶¶ 267–99. The Plaintiffs established that Mayon USA committed the predicate acts as part of its regular course of business and will continue unless and until it is prevented from committing such acts, thereby satisfying open-ended continuity. *Id.* ¶ 299; *Fagan*, 2021 WL 2845034, at *4. In addition to satisfying open-ended continuity, Mayon USA satisfies close-ended continuity, as it conducted illicit transactions (both directly and indirectly through the Front Companies it created) in furtherance of the RoFx Scheme between at least April 2019 and March 2021—a period of 22 months—which is sufficient to establish close-ended continuity. Am. Compl. ¶¶ 170; Ex. 7; *see Magnifico*, 783 F. Supp. 2d at 1229 (finding an 18-month period sufficient to establish close-ended continuity).

D. Causation

"[P]leading a civil RICO claim requires that plaintiffs plead facts sufficient to give rise to a reasonable inference that the claimed racketeering activity . . . was the but-for and proximate cause of the plaintiffs' injuries." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is

whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). The injurious conduct need not be the sole cause of the plaintiffs' injuries, but there must be "some direct relation" between the conduct and the injury to sustain a claim. *Williams*, 465 F.3d at 1287–88; *see, e.g.*, *Hpc US Fund 1 v. Wood*, No. 0:13-CV-61825-UU, 2014 WL 12496558, at *5 (S.D. Fla. June 11, 2014) (holding that allegations were sufficient to establish proximate cause because the "alleged RICO conduct, fraudulently transferring Plaintiffs' real property investments and misrepresenting these transfers to Plaintiffs, led directly to Plaintiffs' alleged injury, the loss of Plaintiffs' real property investments.").

The Amended Complaint alleged that the Plaintiffs were, and continue to be, injured by reason of Mayon USA's violations of 18 U.S.C. § 1962(c) and the aforementioned predicate acts. Am. Compl. ¶ 300. The injuries suffered by the Plaintiffs include continued deprivation of money taken by means of the RoFx Scheme and by significant legal fees and related costs in attempting to address the unlawful conduct and recover what rightfully belongs to the Plaintiffs. *Id.* ¶ 301. The Plaintiffs alleged that their injuries were the direct, proximate, and reasonably foreseeable result of the violations of 18 U.S.C. § 1962(c) and the aforementioned predicate acts. *Id.* ¶ 303. Given that the Plaintiffs established that Mayon USA satisfied each of the requirements of a civil RICO claim, this Court should grant default judgment against it.

### III.     Count II: RICO Conspiracy

Per Section 1962(d) of the RICO statutes, it is "unlawful for any person to conspire to violate" any of the substantive provisions of RICO. 18 U.S.C. § 1962(d); *see Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010). "An agreement to participate in a RICO conspiracy can be proved in one of two ways: (1) by showing an 'agreement on an overall objective,' or (2) in the absence of such an agreement, by showing that a defendant agreed personally to commit two predicate acts and therefore to participate in the 'single objective' conspiracy." *Fernandez de Cordoba*, 2018 WL 1830805, at *5 (quoting *U.S. v. Church*, 955 F.2d 688, 694 (11th Cir. 1992)). A plaintiff may show the existence of an agreement between the alleged conspirators "from circumstantial evidence of the scheme." *Cont'l Cas. Co. v. Cura Grp.*, No. 03-61846-CIV, 2005 WL 8155321, at *23 (S.D. Fla. Apr. 6, 2005) ("Because one cannot know another's subjective intent, circumstantial evidence must be relied upon to indicate intent"); *see id.* at *24 ("Rule 9(b) permits [m]alice, intent, knowledge, and other condition of mind to be averred generally) (internal quotation omitted); *see also Republic of Panama v. BCCI Holdings*

*(Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997) (explaining that direct evidence of a RICO agreement is not required; rather, the existence of a conspiracy "may be inferred from the conduct of the participants.").

In the Amended Complaint, the Plaintiffs sufficiently alleged that Mayon USA unlawfully conspired to violate 18 U.S.C. § 1962(c), which itself is a violation of 18 U.S.C. § 1962(d). Am. Compl. ¶ 306. To promulgate and perpetuate the RoFx Scheme, the RoFx Operators and Mayon USA agreed to accomplish an unlawful plan to engage in the pattern of racketeering described in Count I, *supra* Section II.B. *Id.* ¶ 307. The RoFx Operators and Mayon USA agreed to the overall objective of the conspiracy or to commit personally at least two predicate acts of racketeering, as detailed above, *supra* Section II.B. *Id.* ¶ 308. The Plaintiffs suffered monetary injuries as a direct and proximate result of the predicate acts taken in furtherance of the conspiracy. *Id.* ¶ 309. Given that the Plaintiffs established that Mayon USA satisfied each of the requirements of a civil RICO conspiracy claim, this Court should grant default judgment against it.

**IV.** **Count IV: Conspiracy to Commit Fraud**

Under Florida law, succeeding on a civil conspiracy claim requires proof of an agreement between two or more parties to do an unlawful act. *Tippens v. Round Island Plantation L.L.C.*, No. 09-CV-14036, 2009 WL 2365347, at *4 (S.D. Fla. July 31, 2009). The well-pleaded allegations must also show the performance of some overt act in pursuance of the conspiracy which caused injury to the plaintiff. *Id.* However, "[e]ach coconspirator need not act to further a conspiracy; each 'need only know of the scheme and assist in it in some way to be held responsible for all acts of his coconspirators.'" *Charles v. Fla. Foreclosure Placement Ctr.*, 988 So. 2d 1157, 1160 (Fla. 3d DCA 2008) (finding it unnecessary for each defendant charged with conspiracy to be accused of making misrepresentations as long as at least one coconspirator committed such an overt act). Any conspiracy claim relies on the presence of an actionable claim underlying the conspiracy. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007) (explaining that proof of an underlying fraud is a prerequisite to a claim of conspiracy to commit fraud).

In the present case, the Complaint sufficiently alleges that Mayon USA conspired to commit fraud under Florida common law. Am. Compl. ¶ 319. Mayon USA agreed to participate with the RoFx Operators to commit the fraud detailed in Count III of the Amended Complaint, doing so knowing it was furthering or concealing the fraud or, alternatively, recklessly knowing the predictable result of their actions would further or conceal the fraud. *Id.* Mayon USA acted as

a Company Organizer for the RoFx Scheme. *Id.* at 25. Mayon USA, directly or via its agents Garda, Eckert, and Konovalenko, provided the RoFx Operators with Front Companies Easy Com, Notus, ShopoStar, and Global E-Advantages; furthermore, Mayon USA helped set up these companies' bank accounts for use in collecting and moving RoFx customer funds. *Id.* ¶¶ 162–181, 320(q). Therefore, this Court should find Mayon USA liable for conspiracy to commit fraud because it agreed to participate with one or more of the RoFx Operators to commit the fraud and took overt acts pursuant to the conspiracy which, in summation, actually and proximately caused over $75 million in damages to the Plaintiffs. *Id.* ¶ 316.

## V.     Count V: Aiding and Abetting Fraud

Although none has explicitly recognized a cause of action for aiding and abetting fraud, many Florida courts have assumed that the cause of action exists. *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1097 (11th Cir. 2017). To prevail on a claim of aiding and abetting fraud, the well-pleaded allegations must prove (1) the existence of an underlying fraud; (2) that the defendant had knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the commission of the fraud. *Id.* at 1097-98.  Circumstantial evidence is sufficient to prove actual knowledge of the underlying fraud. *See Wiand v. Wells Fargo Bank*, 938 F. Supp. 2d 1238, 1245 (M.D. Fla. 2013). The Eleventh Circuit explained that a defendant provides "substantial assistance" when he or she "affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the [fraud] to occur." *Chang*, 845 F.3d at 1097–98.

In the present case, the Amended Complaint sufficiently alleges that Mayon USA committed aiding and abetting fraud under Florida common law. Am. Compl. ¶ 323, 325. Mayon USA knowingly aided the RoFx Operators to commit or conceal the fraud detailed in Count III of the Amended Complaint. *Id.* ¶¶ 312–16, 319–20. This Court should find that the overt acts taken by Mayon USA pursuant to the conspiracy to commit the fraud also show that Mayon USA substantially assisted the RoFx Operators to commit or conceal the fraud. *See supra* Section IV. Therefore, this Court should find Mayon USA liable for aiding and abetting fraud because Mayon USA's acts facilitated, promoted, or concealed the fraud, actually and proximately causing over $75 million in damages to the Plaintiffs. Am. Compl. ¶ 316.

## VI.     Count VII: Conspiracy to Commit Conversion

A conspiracy to commit conversion claim is much like any other conspiracy claim, the only difference being the underlying tort in question. *See supra* Sections II andIV. To prevail on this

claim, the well-pleaded allegations must prove, as a prerequisite, that conversion occurred, meaning that the defendant engaged in an unauthorized act which deprived the plaintiff of his or her property permanently or for an indefinite amount of time. *Fagan*, 2021 WL 2845034, at *13. Money may be the object of conversion, but there must be an obligation to keep intact or deliver the specific money in question. *Id.* at *14 (explaining that this obligation is generally established if the alleged wrongdoer is obligated to hold the funds in a trust or escrow account). Once conversion has been established, a court should find that a conspiracy existed if the well-pleaded allegations show a meeting of the minds between two or more persons to accomplish a common and unlawful plan to commit the conversion. *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000).

In the present case, the Amended Complaint sufficiently alleges that Mayon USA knowingly agreed to help the RoFx Operators commit conversion and took substantial steps in furtherance of this goal. Am. Compl. ¶ 334. Mayon USA agreed to participate with the RoFx Operators in a conspiracy to commit conversion, as sufficiently pled in Count VI of the Complaint, doing so knowing it was furthering or concealing conversion of the RoFx customers' funds. *Id.* ¶¶ 327–32, 334. The overt acts outlined in Section IV of this Motion are also sufficient to show that Mayon USA is liable for conspiracy to commit conversion. *See supra* Section IV. Therefore, this Court should find Mayon USA liable on this Count because its acts facilitated or concealed the conversion of the RoFx customers' funds which damaged the Plaintiffs for the near $75 million contributed to the RoFx Scheme. Am. Compl. ¶¶ 316, 336.

**VII. Count VIII: Aiding and Abetting Conversion**

The difference between a claim of aiding and abetting conversion and another aiding and abetting claim is the underlying tort in question. *See supra* Section VI. To prevail on this claim, the well-pleaded allegations must prove, as a prerequisite, that conversion occurred. *See supra* Section VI. The "actual knowledge" and "substantial assistance" elements of an aiding and abetting claim must pertain to the conversion. *See supra* Section VI. As previously stated, a defendant substantially assists in converting property when he or she "affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the [conversion] to occur." *Chang*, 845 F.3d at 1097–98.

In the present case, the Amended Complaint sufficiently alleges that Mayon USA committed aiding and abetting conversion under Florida common law. Am. Compl. ¶¶ 337–38.

Mayon USA aided the RoFx Operators to commit or conceal the conversion, as detailed in Count IV of the Complaint, doing so knowing it was assisting the RoFx Operators to commit or conceal conversion or, alternatively, recklessly knowing the predictable result of its actions would assist the RoFx Operators to commit or conceal conversion. *Id.* ¶¶ 339–40. This Court should find that the overt acts taken by Mayon USA pursuant to the conspiracy to commit the fraud, outlined in Section IV, also show that Mayon USA substantially assisted the RoFx Operators to commit or conceal conversion. *See supra* Section IV. Therefore, this Court should find Mayon USA liable for aiding and abetting conversion because Mayon USA's acts facilitated or concealed the conversion of the RoFx customers' funds which damaged the Plaintiffs for the near $75 million contributed to the RoFx Scheme. Am. Compl. ¶¶ 316, 341.

### VIII.    Default Judgment Limited to Liability *Only*

Pursuant to 18 U.S.C. § 1964(c), a civil RICO plaintiff is entitled to recover treble damages plus costs and attorneys' fees from the Defendants. 18 U.S.C. § 1964(c). Plaintiffs are entitled to recover actual and punitive damages in any action for fraud, including conspiracy to commit and aiding and abetting fraud claims. *Vance v. Indian Hammock Hunt & Riding Club, Ltd.*, 403 So. 2d 1367, 1372 (Fla. 4th DCA 1981). Likewise, plaintiffs can recover both compensatory and punitive or exemplary damages in any action for conversion, including conspiracy to commit and aiding and abetting conversion claims. *Goodrich v. Malowney*, 157 So. 2d 829, 834 (Fla. 2d DCA 1963). In unjust enrichment actions, however, plaintiffs can usually recover compensatory damages, incidental damages, and equitable relief. *Circle Fin. Co. v. Peacock*, 399 So. 2d 81, 83–4 (Fla. 1st DCA 1981).

Plaintiffs are still navigating motions to dismiss and have yet to begin discovery or move for class certification. Until the Court has an opportunity to consider whether Plaintiffs' action is appropriate for class treatment—which it is—damages cannot reasonably be calculated for purposes of entering final judgment. Accordingly, Plaintiffs respectfully request the Court enter default judgment against the Defaulting Defendants *solely as to liability* and defer judgment as to damages. *See, e.g.*, *Trull v. Plaza Assocs.*, 1998 WL 578173, at *1, 4 (N.D. Ill. Sept. 3, 1998) (considering the question of class certification after it had entered default judgment against one of the defendants as to liability only); *Leider v. Ralfe*, No. 01-CV-3137, 2003 WL 24571746, at *10 (S.D.N.Y. Mar. 4, 2003) (same), *report and recommendation adopted in part,* No. 01 CIV.

3137, 2003 WL 22339305 (S.D.N.Y. Oct. 10, 2003); *also Kron v. Grand Bahama Cruise Line, LLC*, No. 15-CIV-23807 (S.D. Fla. Sept. 22, 2017) [ECF No. 60].

## CONCLUSION

The Court should enter default judgment against the Defaulting Defendants *on liability only*, and should determine damages after the Plaintiffs' class certification motion has been filed and resolved. If class certification is granted, Plaintiffs will conduct discovery to identify the class members and determine their damages on a class-wide basis.

Dated: July 15, 2022.                               Respectfully submitted,

/s/     *Dennis A. González*

**Dennis A. González** (Fla. Bar No. 1032050)
Dennis.gonzalez@hklaw.com
Jose A. Casal (Fla. Bar No. 767522)
Jose.Casal@hklaw.com
Andrew W. Balthazor (Fla. Bar No. 1019544)
Andrew.Balthazor@hklaw.com
Sydney B. Alexander (Fla. Bar. No. 1019569)
Sydney.Alexander@hklaw.com
Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: 305-374-8500

Warren E. Gluck (N.Y. Bar No. 4701421)
*Pro hac vice*
Warren.Gluck@hklaw.com
Matthew R. DiBlasi (N.Y. Bar No. 4237475)
*Pro hac vice*
Matthew.DiBlasi@hklaw.com
Ruarri M. Rogan (N.Y. Bar No. 5800107)
*Pro hac vice*
Ruarri.Rogan@hklaw.com
Holland & Knight LLP
31 West 52nd Street
New York, New York 10019

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on or about July 15, 2022, true and accurate copies of Plaintiffs' Motion for Default Judgment, [Proposed] Order, and Declaration Exhibit A were served on counsel of record via the CM/ECF system. The undersigned further certifies that a copy of the foregoing documents was served upon Defendants at the addresses listed below via mail or as otherwise indicated:

| | |
|---|---|
| **Art Sea Group Ltd.**<br>Via publication on Plaintiffs' website | **Auro Advantages, LLC**<br>Via publication on Plaintiffs' website |
| **Easy Com, LLC**<br>c/o Registered Agent<br>159 Main Street, Unit 100,<br>Nashua, NH 03060 | **Marina Garda**<br>Via publication on Plaintiffs' website |
| **Global E-Advantages LLC**<br>c/o Registered Agent<br>North West Registered Agent LLC<br>8 The Green, Suite B,<br>Dover, DE 19901 | **Grovee, LLC**<br>c/o Registered Agent<br>Delaware Business Incorporators<br>3422 Old Capitol Trail, Suite 700<br>Wilmington, DE 19808 |
| **Ivan Hrechaniuk**<br>Via direct message to his LinkedIn profile | **Borys Konovalenko**<br>Via email to<br>borys.konovalenko@gmail.com |
| **Mayon Solutions Ltd**<br>Via email to info@mayon.solutions and sales@mayon.solutions | **Mayon Solutions, LLC**<br>(1) c/o Registered Agents, Inc.<br>159 Main Street, Unit 100, Nashua, NH 03060; and<br><br>(2) Via courtesy email to Mayon.llc@gmail.com |
| **Notus, LLC**<br>c/o Registered Agent<br>Colorado Registered Agent LLC<br>1942 Broadway Street, Suite 314C,<br>Boulder, CO 80302 | **Profit Media Group LP**<br>4 Queen Street, Suite 1,<br>Edinburgh, GB, EH21JE |
| **Shopostar, LLC**<br>c/o Registered Agent<br>Colorado Registered Agent LLC<br>1942 Broadway Street, Suite 314C,<br>Boulder, CO 80302 | **Olga Tielly**<br>3rd Floor 207 Regent Street,<br>London, United Kingdom W1B3HH |
| **Trans-Konsalt MR Ltd.**<br>Via publication on Plaintiffs' website. | |

- 17 -

Respectfully submitted,

/s/ *Dennis A. González*
**Dennis A. González**
Florida Bar No. 1032050
Dennis.gonzalez@hklaw.com
Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: 305-374-8500
*Attorney for Plaintiffs*